1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3

4     **LUZ DIAZ NAVARRO, et al.,**

5     **Plaintiffs,**

      **v.**                                          **Civil No. 07-1028 (GAG)**

6

7     **MUNICIPALITY OF YABUCOA, et al.,**

8     **Defendants.**

9                              <u>**OPINION AND ORDER**</u>

10          Plaintiffs Luz Diaz-Navarro ("Diaz")  and Wilfredo Colon-Santiago ("Colon-Santiago")

11    brought an action against the Municipality of Yabucoa, Mayor Angel S. Garcia ("Mayor Garcia"),

12    the Director of Human Resources, Neysha Morales ("Morales"), the Administrator of the

13    Municipality, Maria de los Angeles Rivera ("Rivera"), and their immediate supervisors, Finance

14    Director Luis Castro Sepulveda ("Castro"), and Supervisor in Charge of Collection of Taxes Shirley

15    A. Ortiz Morales ("Ortiz-Morales"), pursuant to Section 1983 of the Civil Rights Act, 42 U.S.C.

16    § 1983.  They claim political discrimination in violation of  the First Amendment, Fourteenth

17    Amendment, and Due Process Clause, as well as Local Law 100, P.R. Laws Ann., tit. 29  §§ 146 et

18    seq., and Article 1802 of the Puerto Rico Civil Code, 31 P.R. Laws Ann.  §§ 5141 et seq.

19    Defendants moved for summary judgment (Docket No. 48) pursuant to Fed.R.Civ.P.56.  In their

20    motion for summary judgment they argue: (a) that plaintiffs have failed to establish a prima facie

21    claim of political discrimination inasmuch as the challenged employment actions were not motivated

22    by politically discriminatory animus; (b) that defendants are entitled to qualified immunity; (c) that

23    plaintiffs have failed to establish Municipal liability under Section 1983; and (d) that the

24    supplemental claims should be dismissed along with the federal claims that warrant dismissal.

25          After reviewing the pleadings, the court **DENIES** defendants' motion for summary judgment.

26    (Docket No. 48.)

27          **I.      Relevant Factual Background**

28          Plaintiffs are both active members of the Popular Democratic Party ("PDP"), and they both

**Civil No. 07-1028 (GAG)**

1   began working for the Municipality of Yabucoa before Mayor Garcia, of the New Progressive Party

2   ("NPP"), took office in the year 2001.  (Docket No. 49-2 at 3.)

3         **A. Luz Diaz-Navarro**

4         Plaintiff Diaz has been a member of the PDP since she was eighteen years old.  (Docket No.

5   61-2 at 11.)  She started working for the Municipality of Yabucoa in 1998 as an Interim Property

6   Officer in the Finance Department.  (Docket No. 49-3 at 4-6.)  In the year 2000, she was promoted

7   to the position of Administrative Official IV in the Finance Department, and has held this position

8   ever since.  (Docket No. 49-3 at 7.)

9         Diaz claims that she has not received a pay increase in eight years of work.  (Docket No. 61-2

10  at 2.)  She states that she spoke to her supervisor, defendant Castro on various occasions about this

11  issue, but that she never received a response.  Id.  Also, Diaz requested a position directing the Sales

12  Tax Office, but Castro never responded to her proposal.  (Docket No. 61-2 at 21.)

13        Diaz further claims that in 2006 defendant Rivera asked her to lend her equipment to the

14  Finance Director's secretary.  The next day, plaintiff's computer was literally removed from her

15  desk.  This, she claims, left her without equipment and without being able to perform her

16  employment duties for five months.  (Docket No. 61-2 at 22.)  Furthermore, Diaz asked Castro to

17  take steps to retrieve her computer, but he never responded. (Docket No. 61-2 at 23.)

18        Diaz also claims that on various occasions she was moved from her work area and her

19  equipment was taken away, but that on one occasion in particular she was moved to the Finance

20  Department to an area without a phone, a tool which is critical for the performance of her job duties

21  because she handles claims.  (Docket No. 61-2 at 26.)

22        Finally, Diaz testified that she spoke to defendant Castro with regards to her salary.  In

23  particular, two other employees were appointed to the same position she held – Administrative

24  Officer IV– but were given higher salaries.  (Docket No. 61-2 at 2-4.)  In the same statement she

25  specified that the two employees whom she was referring to when she spoke to Castro were Maritza

26  Arroyo and Dailene Felix, both affiliated with the NPP. (Docket No. 61-2 at 5.)  Furthermore,

27

28                                          2

**Civil No. 07-1028 (GAG)**

1 plaintiff Diaz says that she told Castro "on several occasions [what] was being done with the Popular

2 Democratic employees [. . .] that no salary increases were being given and large increases in salary

3 were given to the NPP employees [. . .] and, his answer was 'Well, yours had the opportunity to do

4 it, and they didn't do it', meaning 'yours' as ours in the PDP, not the NPP." (Docket No. 61-2 at 18.)

5        **B. Wilfredo Colon-Santiago**

6        Plaintiff Colon-Santiago  has been a member of the PDP since 1988.  (Docket No. 61-3 at

7 14.)  He is presently negotiating with the president of the PDP to assume the position of Electoral

8 Commissioner of the PDP in Yabucoa. (Docket No. 61-3 at 15.)  Colon started working in 1999 for

9 the Municipality of Yabucoa as a General Services Assistant or Deputy of General Services.  (Docket

10 No. 61-3 at 1.) He held that position until July 2000. In that year Colon was promoted to Deputy

11 Collector under the supervision of defendant Ortiz-Morales, who was the Acting Official Collector.

12 (Docket No. 61-3 at 1-3.) He applied for the position of Interim or Acting Official Collector on three

13 occasions, first in 2005, then on two occasions in 2006.  He claims that his requests were left

14 unanswered on all three occasions, although he is the person with the most experience in his office

15 and  has been there for the longest period of time.  (Docket No. 61-3 at8-12.) He claims that he was

16 not considered because of his affiliation with the PDP (Docket No. 61-3 at 29.)  He also states that

17 he has not received any pay increases in the ten years that he has been working for the Municipality,

18 only a compensation of $50.00 dollars for changing positions.  Id.  Colon claims that when he

19 applied for the position of Interim Official Collector, Ortiz-Morales made a comment that he would

20 not be hired  because he was an affiliate of the Popular Democratic Party. (Docket No. 61-3 at 23.)

21 Also, Ortiz-Morales allegedly told him that the people of Yabucoa "must be [depressed because of

22 voting] for me for the assembly [since they are aware that I am affiliated to the PDP]." (Docket No.

23 61-3 at 28.)

24        **II.**      **Standard of Review**

25        Summary Judgment is appropriate when "the pleadings, depositions, answers to

26 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

27

28                                  3

**Civil No. 07-1028 (GAG)**

1  genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

2  of law."  Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "An issue is

3  genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it

4  'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'"  <u>Iverson</u>

5  <u>v. City of Boston</u>, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

6        The moving party bears the initial burden of demonstrating the lack of evidence to support

7  the non-moving party's case.  <u>Celotex</u>, 477 U.S. at 325.  The non-moving party must then "set forth

8  specific facts showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e).  If the court finds

9  that some genuine factual issue remains, the resolution of which could affect the outcome of the case,

10  then the court must deny summary judgment.  See <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,

11  248 (1986).  When considering a motion for summary judgment, the court must view the evidence

12  in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit

13  of any and all reasonable inferences.  <u>Id.</u> at 255.  Moreover, at the summary judgment stage, the court

14  does not make credibility determinations or weigh the evidence.  <u>Id.</u>

15        **III.    Analysis**

16        **A. Section 1983**

17        Plaintiffs bring their claims for the violation of their constitutional rights pursuant to section

18  1983, 42 U.S.C.A. § 1983. This disposition "provides a remedy for deprivations of rights secured

19  by the Constitution and laws of the United States when that deprivation takes place 'under color of

20  any statute, ordinance, regulation, custom, or usage, of any State [. . .].'" <u>Lugar v. Edmondson Oil</u>

21  <u>Co.</u>, 457 U.S. 922, 924 (1982) (quoting) 42 U.S.C. § 1983). In order for a claim to be cognizable

22  under section 1983, plaintiffs must plead and prove three elements of the cause of action: (1) that

23  the defendants acted under color of state law; (2) that plaintiffs were deprived of federally protected

24  rights, privileges, or immunities; and (3) that the defendants' alleged conduct was causally connected

25  to the plaintiffs' deprivation. <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 558 (1st Cir. 1989).

26        The first element is satisfied in this case against all defendants because all of them are

27

28                                                    4

**Civil No. 07-1028 (GAG)**

1   officials of the Municipality of Yabucoa and they acted in their capacity as such. The second element

2   shall be discussed in subsection B, <u>infra</u>. The third element– causal connection–is minimally satisfied

3   for defendant Mayor Garcia, since he is the authority who gives pay increases and promotions

4   (Docket No. 55-9 at 10.)  Also, he appointed Maritza Arroyo, a member of the NPP, as a permanent

5   employee (Docket No. 55-9 at 14), although he claims that he was not going to give permanencies

6   until the deficit was eliminated. (Docket No. 55-9 at 2.)  Defendant Morales satisfies the necessary

7   causation for a Section 1983 claim because as Director of Human Resources, she allegedly did not

8   respond to plaintiff Colon-Santiago's employment application on three occasions and appointed

9   other people who are claimed to be NPP members. (Docket No. 61-3 at 1-19.)  Defendant Ortiz-

10  Morales also satisfies the third prong because she was plaintiff Colon-Santiago's supervisor and

11  allegedly told him when he applied for the position of Interim Official Collector, that he would not

12  be hired because he was an affiliate of the Popular Democratic Party. (Docket No. 61-3 at 23.)

13  Similarly, defendant Rivera allegedly deprived plaintiff Diaz of her equipment, thus making it

14  impossible for her to perform her employment duties (Docket No. 61-2 at 22), while defendant

15  Castro, plaintiff Diaz's immediate supervisor, allegedly ignored her pay increase and employment

16  requests, and made politically charged remarks when asked about the lack of salary increases for

17  PDP employees. (Docket No. 61-2 at 18.)  Thus, the final prong of the Section 1983 *prima facie* case

18  is satisfied as to all defendants.

19        **B. Political Discrimination**

20        In order to succeed in a political discrimination claim, the plaintiff has the initial burden to

21  prove (1) that plaintiff and defendant belong to opposing political affiliations; (2) that defendant has

22  knowledge of the plaintiff's affiliation; (3) that a challenged employment action occurred; and (4)

23  that there is sufficient evidence, whether direct or circumstantial, that political affiliation was a

24  substantial or motivating factor and that the challenged employment action stemmed from politically

25  based animus. <u>Peguero-Moronta v. Santiago</u>, 464 F.3d 29,48 (1st Cir. 2006).  "Plaintiff must point

26  to the evidence on record which, if credited, would permit a rational fact finder to conclude that the

27

28                                              5

**Civil No. 07-1028 (GAG)**

1   challenged personnel action occurred and stemmed from politically based discriminatory animus."

2   Gonzalez de Blasini v Family Dept., 377 F.3d 81, 85 (1st Cir. 2004) (quoting LaRou v. Ridlon, 98

3   F.3d 659, 661 (1st Cir. 1996) (quoting Rivera-Cotto v. Rivera, 38 F.3d 611, 614 (1st Cir. 1994)).

4   Furthermore, plaintiffs must prove through specific facts that a causal connection exists between the

5   adverse employment action and their political affiliation.  Roman  v. Delgado Altieri, 390 F. Supp.

6   2d 94, 102 (D.P.R. 2005).  Once the plaintiff satisfies the four-prong *prima facie* case, defendant,

7   can raise a  Mt. Healthy defense. See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S.

8   274 (1977).   In order to use this defense, the defendant must show that there was a non-

9   discriminatory reason for the challenged employment action.  Acevedo Diaz v. Aponte, 1 F.3d 62,

10  65 (1st Cir. 1993).  If defendant's use of evidence to support his Mt. Healthy defense is credible and

11  shows that the employment action was non-discriminatory, then the burden of proof shifts once more

12  towards plaintiff.  Plaintiff must then show that political affiliation "was more likely than not a

13  motivating factor." Padilla-Garcia v. Rodriguez, 212 F.3d 69, 74 (1st Cir. 2000).

14          In light of the evidence presented, the court opines that the first prong of the plaintiffs' *prima*

15  *facie* case is satisfied since the plaintiffs are both affiliated with the PDP and defendants with the

16  NPP.  Thus, the court's analysis will concentrate on prongs 2, 3, and 4.

17          In order to meet the burden of proof for a political discrimination claim, plaintiff must prove

18  that defendants had knowledge of plaintiffs political affiliation.  The First Circuit has established that

19  knowledge of political affiliation cannot be based on "testimony of having been seen, or [. . . ] met

20  during routine campaign activity participation, having been visited by the now incumbent defendant

21  while said defendant was a candidate for the position he now holds, by having held a

22  trust/confidential/policymaking position in the outgoing administration, by having political

23  propaganda adhered to plaintiff's car and/or house, or through the knowledge of third parties."

24  Roman, 390 F. Supp. 2d at 103 (citing  Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 432 (1st Cir.

25  2005) (stating that the mayor's knowledge of plaintiff's support for the opposing party in the

26  primaries does not establish political animus); Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23 (1st

27

28                                                      6

**Civil No. 07-1028 (GAG)**

1   Cir. 2004) (holding that routine campaign canvassing is not sufficient to infer political affiliation by

2   defendant); <u>Padilla-Garcia</u>, 212 F.3d at 73 (affirming that proof of political animus "requires more

3   than merely juxtaposing a protected characteristic –someone else's politics– with the fact that

4   plaintiff was treated unfairly") (citations omitted)).   Therefore, the court will not refer to the

5   statements made by plaintiffs describing their political activism as proof of defendants' knowledge

6   of their political affiliation.  However, the evidence on record shows that defendants were aware of

7   plaintiffs' political affiliation to the PDP because they admit as much in their depositions.  (Docket

8   Nos. 55-9 at 3, 55-9 at 7,55-6 at 3, 61-2 at 18, and 61-3 at 23.)  Thus, the second prong is satisfied.

9            The third prong of plaintiffs *prima facie* case requires them to prove that a challenged

10   employment action took place.  Colon applied for the position of Interim or Acting Official Collector

11   on three occasions, first in 2005, then on two occasions in 2006.  He states that his requests were left

12   unanswered on all three occasions.  (Docket No. 61-3 at 8-12.)  He further states that he has not

13   received any pay increases in the ten years that he has been working for the Municipality.  <u>Id.</u>  Diaz,

14   also claims that she has not  received a pay increase in 8 years of work, nor has she been considered

15   for promotion opportunities.  (Docket No. 61-2 at 2.)  She states that she spoke to her supervisor

16   defendant Castro on various occasions about both situations, but that she never received a response.

17   <u>Id.</u>  The Supreme Court has held that the First Amendment protects state employees "not only from

18   patronage dismissals but also from even an act of retaliation as trivial as failing to hold a birthday

19   party for a public employee." <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62, 76 (1990). The

20   Court has further stated that the denial of promotions, transfers, or rehires are irreconcilable with the

21   Constitution. <u>Id.</u>

22            Diaz also claims that in 2006 Rivera asked her to lend the Finance Director's secretary her

23   equipment and that the next day plaintiff's computer was literally removed from her desk.  (Docket

24   No. 61-2 at 22.)  After plaintiff requested to Castro that her computer be returned, she was allegedly

25   ignored once more.  (Docket No. 61-2 at 23.)  The First Circuit follows the "reasonably inferior"

26   standard in which the plaintiff must prove that the employment action led to conditions that fell

27

28                                                       7

**Civil No. 07-1028 (GAG)**

1   "unreasonably inferior" to the norm of that position.  Agosto-de-Feliciano v. Aponte-Roque, 889

2   F.2d 1209, 1218-19 (1st Cir. 1990).  The court opines that a reasonable fact-finder would understand

3   that plaintiff Diaz's employment conditions were unreasonably inferior to the norm of her position

4   because she did not have a computer or telephone for different extended periods of time even though

5   her employment depended on the use of this equipment. Thus, the third prong is satisfied.[1]

6         Notwithstanding, the court understands that there are genuine issues of material fact with

7   regards to the fourth and final prong of the political discrimination *prima facie* case.  Defendants

8   attempt to use the Mt. Healthy defense by stating that the decision to delay plaintiffs' pay increase

9   and promotion opportunities was based on advice given by the legal counsel of the Municipality

10  who, in turn, followed recommendations given by the Office of the Comptroller of Puerto Rico to

11  other municipalities.  (Docket No. 48 at 2.)  In order to show that they  would have taken the

12  employment actions for non-discriminatory reasons, defendants present evidence of Fiscal Funds and

13  Employee Salaries that support their deficit-reduction defense. (Docket Nos. 55-8, 55-2, and 55-3.)

14  Nevertheless, plaintiffs' evidence could still lead a reasonable jury to conclude that, "more likely

15  than not," the adverse employment actions were caused by discriminatory animus. Defendant Ortiz-

16  Morales stated in her deposition that she did not recommend Colon for the position of Official

17  Collector because he did not have the required course on Bookkeeping.  However, she previously

18  stated  that she had not given the job to Colon-Santiago because he had not requested it when it was

19  published. Id.  Also, Ortiz-Morales admitted that the person who was appointed for that job did not

20  possess the Bookkeeping course. (Docket No. 55-6 at 4-5.)  Plaintiff Colon-Santiago also stated

21  under oath that "when [he] was applying for the position of Interim Official Collector, in a

22

23

24      [1] Defendants also argued that the adverse employment actions at issue fall outside the one-
year statute of limitations applicable to Section 1983 claims in Puerto Rico.  However, these actions
25  fall within the continuing violation doctrine, which allows the court to consider events that took
place outside the statutory period "as long as the untimely incidents represent an ongoing unlawful
26  employment practice." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 107 (2002). The
27  claim, therefore, is not time-barred.

28                                          8

**Civil No. 07-1028 (GAG)**

1  conversation, Ortiz-Morales commented that they would not give [him] that position [. . .] because

2  [he is] an affiliate of the Popular Democratic Party." (Docket No. 61-3 at 23.)  Furthermore, Diaz

3  stated under oath that two employees that are affiliated with the NPP were appointed to her same

4  position, Administrative Officer IV, but with higher paying salaries. (Docket No. 61-2 at 2-5.)  Diaz

5  also claims that when asked about the lack of pay increases for PDP employees, Castro made

6  politically charged and dismissive comments.  (Docket No. 61-2 at 18.)  The court opines that the

7  evidence presented by plaintiff could lead a jury to hold that there was discriminatory animus, thus

8  satisfying the fourth prong of the political discrimination *prima facie* case.

9          For the aforementioned reasons, the court **DENIES** the motion for summary judgment as to

10  the political discrimination claim.

11          **B.      Qualified Immunity**

12          Public officials are entitled to qualified immunity from damages in a Section 1983 claim "if

13  they acted with the objective good faith belief that they were not violating the plaintiff's statutory

14  or constitutional rights, as measured by the state of the law when the deprivation occurred."  See

15  Maldonado Santiago v. Velázquez García, 821 F.2d 822, 830 (1st Cir. 1987).  The three-part inquiry

16  requires the court to consider: (1) whether the plaintiff's allegations, if true, establish a constitutional

17  violation; (2) if so, whether the right was clearly established at the time of the alleged violation; and

18  (3) whether a similarly situated reasonable official would have understood that the challenged action

19  violated that right.  Whalen v. Mass. Trial Court, 397 F.3d 19, 23 (1st Cir. 2005).  Since qualified

20  immunity is an affirmative defense, the defendant has the burden to present evidence that he acted

21  reasonably objective under the circumstances.  See id. at 345.

22          In the present case there are material facts in dispute regarding the objective reasonableness

23  of defendants' actions.  Therefore, the court cannot at this stage determine whether defendants are

24  eligible to receive qualified immunity. The motion for summary judgment on this ground is

25  **DENIED**.

26

27

28                                                                  9

**Civil No. 07-1028 (GAG)**

1

      **C.     Municipal Liability**

2         Public officials have the qualified immunity defense available to them when they face a civil

3 damages claim in their personal capacity. Nevertheless, "personal-immunity defenses are unavailable

4 in official-capacity actions." Kentucky v. Graham, 473 U.S. 159, 166-67 (1985). Official-capacity

5 claims "in all respects [are] another name [for] suits against the entity." (Id.). The Supreme Court

6 states that "[. . .] the legislative history of the Civil Rights Act of 1871 compels the conclusion that

7 Congress did intend municipalities and other government units to be included among those persons

8 to whom Section 1983 applies." Monell v. Department of Social Services of City of New York, 436

9 U.S. 658, 690 (1978). Thus, the Court requires plaintiffs claiming municipal liability to establish a

10 municipal "policy" or "custom" that damaged the plaintiffs. See Board of County Com'rs of Bryant

11 County, Okl. v. Brown, 520 U.S. 397, 403 (1997) (holding that plaintiff established municipal

12 liability by proving that the sheriff hired the officer who used the excessive force that caused

13 plaintiff's damages.)  Moreover, a municipality can be held liable for the acts and decisions of its

14 "duly constituted legislative body or [. . .] officials whose acts may be said to be those of the

15 municipality." Id.  (See Monell, 436 U.S at 694).  There are two ways to attribute municipal liability

16 (1) through a single faulty act by the municipality or the body that represents it; and (2) through

17 municipal employees who show "deliberate indifference" to the consequences of the federal

18 violation. Brown 520 US at406-407.

19        According to Mayor Garcia's deposition, he is the final authority in salary increases and

20 personnel decisions. (Docket No. 49-2 at 2 and Docket No. 49.)  Since  the First Circuit refers to the

21 "final authority approach" to determine municipal liability, then the court opines that there is enough

22 evidence on record that could lead a reasonable jury to hold the Municipality of Yabucoa liable for

23 the political discrimination claim. See Small v. Belfast, 796 F2d. 544, 552 (1st Cir. 1986) (holding

24 that municipal liability could attach by virtue of the unconstitutional action of the city manager).

25 Furthermore, the evidence on record could lead a jury to find that the co-defendants showed

26 "deliberate indifference" to the depravation of plaintiffs constitutional rights. Therefore, the court

27

28                                               10

**Civil No. 07-1028 (GAG)**

1   **DENIES** defendants' request for dismissal of municipal liability.

2       **D.      Supplemental State-Law Claims**

3       Given that plaintiffs' political discrimination claim survived defendants' motion for summary

4   judgment, the court **DENIES** defendants' motion for summary judgment as to the state law claims.

5       **IV.     Conclusion**

6       For the abovementioned reasons, the court **DENIES** defendants' motion for summary

7   judgment. (Docket No. 48.)

8       **SO ORDERED.**

9       In San Juan, Puerto Rico this 2nd day of September, 2009.

10                                                                               *S/Gustavo A. Gelpí*

11                                                          GUSTAVO A. GELPI
                                                          United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                            11